## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THOMAS V. MACLEAN,

                    Petitioner,                    Case Number: 2:09-CV-12992

v.                                                 HONORABLE GERALD E. ROSEN

KENNETH T. MCKEE,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING IN PART CERTIFICATE OF APPEALABILITY

Petitioner Thomas V. MacLean is presently in the custody of the Michigan Department of Corrections, serving concurrent sentences of 17-1/2 to 30 years' imprisonment for second-degree murder and 5 to 15 years' imprisonment for operating a motor vehicle while intoxicated causing death. Through counsel, he filed the pending habeas petition pursuant to 28 U.S.C. § 2254. Petitioner argues that an eight-year delay between the time of the car accident and his trial violated his rights to a speedy trial and due process and the destruction of evidence violated his right to due process.

### I. Facts and Procedural Background

Petitioner's convictions arise from an automobile accident that occurred on February 27, 1998, causing the death of William Shand. The accident occurred on Romeo Plank Road in Romeo, Michigan at approximately 7:30 p.m. It involved three vehicles: the vehicle driven by Shand (a Dodge Caravan minivan); the vehicle driven by

Petitioner (his mother's white Pontiac Grand Prix); and the vehicle driven by Raymond Pini (a Ford F-150 truck). Shand died from a crushing injury to his chest. Petitioner suffered severe injuries in the accident, including a closed-head injury. Pini was not seriously injured. The prosecutor's theory of the case was that Petitioner, while intoxicated, drove his Grand Prix southbound on Romeo Plank Road at a high rate of speed and struck Shand's minivan. The minivan narrowly missed an oncoming Ford Truck, but hit a roadside utility pole. Petitioner's Grand Prix hit the oncoming Ford Truck and split into pieces.

Philip Porte testified that he was traveling southbound on Romeo Plank Road on the night of the accident. He was passed by a vehicle he believed to be a Grand Prix traveling at approximately 80 m.p.h. A minute or so after the Grand Prix passed him, he came upon the accident scene. He saw that the Grand Prix had been split in half, and that a minivan had crashed into a utility pole. Porte stopped his vehicle to see if he could offer assistance. He and another man approached the minivan. Shand was non-responsive. Porte noticed the smell of gasoline and downed wires from the utility pole. He backed away. Moments later the vehicle caught fire.

Liesl Bollaert testified that she was driving north on Romeo Plank Road on February 27, 1998. She saw a white vehicle coming toward her in the southbound lane. The white vehicle was approximately two feet over the yellow line, requiring her to move over to avoid being hit. She watched the speeding vehicle in her rearview mirror and witnessed the collision eight to ten seconds later.

2

Raymond Pini testified that the collision took place near the intersection of Romeo Plank and Gilmore Roads. Pini testified that he was driving northbound on Romeo Plank Road in his Ford F-150 pickup truck when he saw Shand's minivan cross in front of him, followed closely by the Grand Prix. Pini slammed on his brakes, but was unable to stop. He hit the rear of the Grand Prix. He exited his vehicle and approached the minivan. After finding Shand lifeless, he approached the Grand Prix, which was split into several pieces.

Macomb County Sheriff's Deputy Keith Paolella testified that he responded to the scene of the accident, arriving at 7:13 p.m. When he arrived, Shand's minivan was engulfed in flames. Paolella described the accident scene as the worst he had ever seen.

Robin Warchol testified as an expert in the field of medical technology. She testified that, at approximately 8:30 p.m. on the date of the accident, she analyzed a blood sample that was taken from Petitioner. His blood alcohol level was 0.28.

Retired Detective Terry Blount, a certified accident reconstructionist, testified that he visited the scene approximately one hour after the accident occurred. He testified that the Grand Prix was traveling between 85 and 90 m.p.h., and Shand's vehicle between 55 and 60 m.p.h. Blount found no evidence that Petitioner applied his vehicle's brakes prior to the impact with Shand's vehicle, but he could not rule out the possibility that Petitioner had done so. Blount found evidence that Petitioner braked after the impact with Shand's vehicle. Shand's vehicle struck the utility pole above ground level, breaking the pole.

The defense presented two witnesses: Petitioner's mother and an accident

3

reconstruction expert, David James Shepardson.  Shepardson testified that Blount's

conclusions about the accident were not scientifically valid because they were not based

on science or the teachings of accident reconstruction.  Shepardson testified that he could

not determine the speed of the vehicles at the time of the crash because the vehicles had

not been preserved, the road had been resurfaced, and the photographs and measurements

taken were inadequate to perform the necessary calculations.  Shepardson testified as to

various methods for determining rate of speed, with the momentum method the optimal

method in this case.  Blount did not use this method.  Shepardson testified that Blount

used an incorrect breaking factor and incorrect coefficient of friction in his calculations.

Shepardson proceeded to discuss several additional areas in which he determined

Blount's analysis was incorrect.

Petitioner was convicted by a jury in Macomb County Circuit Court of second-

degree murder and operating a motor vehicle while intoxicated causing death rendered.

On April 6, 2006, he was sentenced to 17-1/2 to 30 years' imprisonment for the second-

degree murder conviction and 5 to 15 years' imprisonment for the operating-a-motor

vehicle conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He raised the

following claims:

> I.     This case must be dismissed given the destruction and loss of the most
> significant physical evidence, the inability of the defendant's expert to
> analyze the evidence and scene, the loss of witnesses and memories based
> on the 8 year delay from the collision to the trial.  This egregious violation
> of the defendant's constitutional rights to a speedy trial and due process is

not excused in the interest of saving taxpayer money.

II.     Reversible error occurred through the testimony of unqualified "experts"
        and the insufficient basis for the admissibility of blood alcohol levels and
        testing in this case.

III.    Despite the fact that there was not a scintilla of evidence that the eight year
        delay was caused by the defendant, the constant baseless claims as to this
        and threats of a criminal investigation of the defendant's family and counsel
        constituted prosecutorial intimidation and deprived defendant of a fair trial,
        especially in light of extensive pretrial publicity that attributed the delay to
        the defendant.

IV.     The trial court committed reversible error by prohibiting evidence of the
        defendant's good character traits by ruling that if this evidence was offered,
        the prosecution would then be allowed to introduce prior alcohol related
        offenses.

The Michigan Court of Appeals affirmed Petitioner's convictions.  *People v.*

*MacLean*, No. 270525, 2007 WL 2713431 (Mich. Ct. App. Sept. 18, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court,

raising the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme

court denied leave to appeal.  *People v. MacLean*, 480 Mich. 1141 (March 26, 2008).

Petitioner's motion for reconsideration was denied.  *People v. MacLean*, 482 Mich. 899

(Mich. Apr. 16, 2008).

Petitioner then filed the pending petition for a writ of habeas corpus.  He raises the

following claims:

I.      The petitioner must be discharged given the intentional destruction and loss
        of the most significant physical evidence of the collision, the inability of the
        petitioner's expert to analyze the evidence and scene, the loss of witnesses
        who were not able to testify and the deterioration of memories based on the
        8 year delay from the collision to the trial.  This egregious violation of the

5

petitioner's constitutional rights to a speedy trial and due process is not excused for the stated purpose of saving taxpayer money.

II.    The intentional destruction of all evidence of the collision is a denial of due process when a prosecution witness cannot therefore be effectively examined on his findings.

## II.  Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)

(*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state

court's application of [Supreme Court] precedent 'unreasonable,' the state court's

decision must have been more than incorrect or erroneous. The state court's application

must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations

omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131

S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme

malfunctions in the state criminal justice systems, not a substitute for ordinary error

correction through appeal. . . . As a condition for obtaining habeas corpus from a federal

court, a state prisoner must show that the state court's ruling on the claim being presented

in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision. *See*

*Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme

Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so

long as neither the reasoning nor the result of the state-court decision contradicts them."

*Early v. Packer*, 537 U.S. 3, 8 (2002).  "[W]hile the principles of "clearly established

law" are to be determined solely by resort to Supreme Court rulings, the decisions of

lower federal courts may be instructive in assessing the reasonableness of a state court's

resolution of an issue."  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing*

*Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp.

2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual

determinations.  See 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption

only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th

Cir. 1998).

### III.  Discussion

### A.  Delay – Speedy Trial and Due Process Claims

Petitioner claims that his rights were violated by the delay in bringing his case to

trial.  Specifically, he claims that the eight-year delay between the date of the car accident

and his arrest was an attempt by the prosecutor to gain a tactical advantage and that the

delay prejudiced his ability to defend himself because evidence was destroyed, memories

dimmed, and a witness could not be located.

Petitioner filed a pre-trial motion to dismiss on speedy trial grounds.  The trial

court heard the testimony of Lieutenant William Donovan, who was employed by the

Macomb County Sheriff's Department and the chief investigating officer in this case.

8

Lieutenant Donovan testified that on March 17, 1998 an arrest warrant was issued for Petitioner.  At the time, however, the arrest warrant was not executed because of Petitioner's accident-related injuries.  Lieutenant Donovan testified that he discussed the arrest warrant with Macomb County District Court Judge Richard McLean.  It was decided that the arrest warrant would be executed once Petitioner had sufficiently recovered from his accident-related injuries so as not to need extensive medical care. Lieutenant Donovan observed that arresting Petitioner while he was still in need of extensive medical care would have been costly for the county and would have compromised the quality of care Petitioner received.  Lieutenant Donovan visited Petitioner's family's house and advised them that an arrest warrant had been issued for Petitioner.  He also contacted attorney Frank Becker, who represented Petitioner at the criminal trial, and advised Becker that there was an outstanding arrest warrant for Petitioner.[1]

Lieutenant Donovan testified that, following the accident, in response to his inquiries, he received two letters from Broe Rehabilitation Services regarding Petitioner's condition.  The first, dated July 2, 1998, stated, in relevant part:

> Mr. MacLean has sustained a traumatic brain injury and multiple traumas as a result of a motor vehicle accident.  He currently is in need of twenty-four hour rehabilitation residential care and is actively participating in our comprehensive rehabilitation brain injury treatment and therapies.

---

[1]  Throughout the criminal trial and these habeas proceedings, the parties have disputed when Frank Becker was retained to represent Petitioner in relation to this accident.  The Court need not resolve this dispute to decide the issues raise in this case.

Mr. MacLean is under the direct medical care of a number of treating physicians including a psychiatrist, neurologist, orthopedic surgeon, and a dental specialist.  He is also under a number of psychotropic medications to help with his medical treatment.

The second letter, dated January 26, 1999, stated that Petitioner "continues to require 24 hour care, supervision, and support for his traumatic brain injury.  He is undergoing cognitive remediation, medical and case management, and psychiatric and psychological treatment along with physical therapy."  Letters from Broe Rehabilitation Services were received by the Sheriff's Department at yearly intervals from 1998 through 2005, with no letters apparently sent in 2003 or 2004.

Petitioner moved to Florida to live with his parents approximately five years after the accident.  The prosecutor represented that, in August 2005, he became aware that Petitioner was living and employed in Florida and apparently well enough to obtain a driver's license.  At that point, after discussions between the prosecutor and Petitioner's attorney, Petitioner voluntarily returned to Michigan for arraignment.

At the conclusion of the hearing, the trial court denied the motion to dismiss, finding no speedy trial violation.  The trial court reasoned, in relevant part:

> [F]or an extensive period of time after [issuance of the arrest warrant] law enforcement , the Court believes, was led to believe that defendant was not able to face the charges that were pending against him.  He was in the Broe Rehabilitation Center.  There were, at least from 1998 through, I believe 2002, yearly letters sent . . . by the Sheriff's Department inquiring as to Mr. MacLean's condition.  Obviously the letters were sent . . . to determine if Mr. MacLean was in a position . . . to face the charges that were against him.

The Court is concerned with the long delay, but believes that it was a delay occasioned, if not intentionally, certainly for the benefit of the defendant and – and the defense. Law enforcement, in this Court's opinion, diligently pursued this case, checking at regular intervals as to the Defendant's availability and his capacity to proceed. They were, again, led to believe that he was not able to proceed. I believe that . . . under those circumstances that there is an adequate explanation for the delay. It was not deliberate. There was no bad faith.

Tr., 11/18/2005, at 89-90.

### 1.      Speedy Trial

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. amend. VI. Courts must balance the following four factors in determining whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 528 (1972). The Sixth Amendment's Speedy Trial Clause does not extend to the period prior to arrest. *United States v. Marion*, 404 U.S. 307, 321 (1971); *United States v. MacDonald,* 456 U.S. 1, 7 (1982). Accordingly, the relevant inquiry for a speedy trial analysis is the time between arrest and trial. In this case, Petitioner was arrested in September 2005, and his trial commenced on February 22, 2006, approximately six months later.

The first question the Court addresses is the length of the delay. "[U]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other facts that go into the balance." *Barker*, 407 U.S. at 530. The Supreme Court has

11

held that, generally, depending on the nature of the charges, a delay that approaches one year is presumptively prejudicial. *Doggett v. United States,* 505 U.S. 647, 652 n. 1 (1992). Where the delay is not presumptively prejudicial, a defendant's Sixth Amendment right has not been violated and the remaining factors need not be considered. *Id.* at 208-09. If the delay is presumptively prejudicial, the remaining three *Barker* factors should be considered. *Id.* In this case, the Michigan Court of Appeals held that the delay between arrest and trial was not so uncommonly long as to give rise to a presumption of prejudice and denied the speedy trial claim. *People v. MacLean*, No. 2007 WL 2713431 at *1 (Mich. Ct. App. Sept. 18, 2007). This Court agrees that delay of approximately six months is not uncommonly long. *See United States v White*, 985 F.2d 271, 275 (6th Cir. 1993) (holding that a six-and-one-half month delay was not presumptively prejudicial). Thus, the state court's finding of no speedy trial violation is not contrary to or an unreasonable application of *Barker* or *Doggett.*

### 2.    Due Process Claim

Petitioner also claims that the pre-arrest delay violated his rights under the Due Process Clause. The Due Process Clause of the Fifth Amendment provides a defendant limited protection against preindictment delay. *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *see also United States v. Marion*, 404 U.S. 307, 324 (1971). In determining whether a preindictment delay violates due process, a court must decide whether the delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and

12

decency." *Lovasco*, 431 U.S. at 790 (internal quotations omitted).  The Sixth Circuit has consistently read *Lovasco* to hold that dismissal for preindictment delay is warranted only when the defendant shows both substantial prejudice to his right to a fair trial *and* that the delay was intentionally imposed by the government to gain a tactical advantage.  *See United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992).  The prosecution of a defendant following a delay does not necessarily deprive him of due process, even if his defense is somewhat prejudiced by the lapse of time. *Lovasco*, 431 U.S. at 796.  "The statutes of limitations, 'which provide predictable, legislatively enacted limits on prosecutorial delay,' serve as the primary safeguard against 'overly stale criminal charges.'" *United States v. Svilvagyi*, 417 F. App'x 472, 479 (6th Cir. 2011).  A defendant bears a "heavy burden" on a claim that a pre-arrest delay violated due process.  *United States v. Baltimore*, No. 10-3305, 2012 WL 2379890, *3 (6th Cir. June 6, 2012) (citing *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997) (noting that "[t]he standard for pre-indictment delay is nearly insurmountable, especially because proof of actual prejudice is always speculative")).

Here, the Michigan Court of Appeals rejected Petitioner's due process claim because the delay was justified, the delay was not engineered by the prosecution to gain a tactical advantage, and Petitioner was not substantially prejudiced by the delay:

> In the context of a due process argument, "[b]efore dismissal may be granted because of prearrest delay there must be actual and substantial prejudice to the defendant's right to a fair trial and an intent by the prosecution to gain a tactical advantage." *People v. Crear*, 242 Mich.App 158, 166; 618 NW2d 91 (2000).  A deliberate and improper delay by the

13

prosecution exists when there is evidence of bad-faith conduct designed to prejudice the defendant. *People v. Betancourt*, 120 Mich.App 58, 62-63; 327 NW2d 390 (1982). If a defendant demonstrates prejudice, the prosecution then bears the burden of persuading the court that the reason for the delay sufficiently justified whatever prejudice resulted. *People v. Cain*, 238 Mich.App 95, 109; 605 NW2d 28 (1999). Because the claim implicates constitutional due process rights, our review is de novo, but the underlying factual findings are reviewed for clear error. *People v. Tanner*, 255 Mich.App 369, 412; 660 NW2d 746 (2003), *rev'd on other grounds* 469 Mich. 437 (2003).

The trial court found, after an evidentiary hearing, that there was an adequate explanation for the delay, that the delay was not deliberate, and that there was no bad faith on the part of the prosecution and police. Defendant suffered severe injuries in the accident, necessitating hospitalization, including a closed-head injury. Although an arrest warrant was issued, authorities did not pursue an arrest because of defendant's medical condition. There was police testimony that defendant's family and his attorney were made aware of the arrest warrant; however, no attempt to push the prosecution forward was made by defendant, nor was there any attempt to seek the preservation of evidence or to gather evidence. Authorities were under the impression that defendant, who was treated for several years at a rehabilitation clinic, was not in a state of health such that proceedings should be commenced. In response to inquiries, authorities received numerous letters from the rehabilitation clinic, which were copied to defendant's attorney, that expressed and suggested that defendant's condition remained poor. Indeed, a letter dated June 2, 2005, from the rehabilitation clinic was admitted, and the letter provided as follows:

> This letter is to inform you that Mr. Thomas MacLean continues to be under Broe Rehabilitation Services, Incorporated care due to his traumatic brain injury, psychiatric overlay and chronic pain, which are all a result of his motor vehicle accident. He continues to treat with a psychiatrist and take psychotropic medications as prescribed.

When authorities discovered that defendant was down in Florida and not in the severely injured condition that they were led to believe, an arrest was pursued. While we may disagree with the prosecution's handling of the case before subjecting defendant to arrest, we cannot conclude on this record that the prosecution allowed the delay in order to gain a tactical advantage, nor was there any evidence of a deliberate, bad-faith attempt to prejudice

14

defendant.  Although defendant suffered some level of prejudice relative to
obtaining evidence of the accident, on balance, reversal in not warranted
considering the reason for the delay, defendant's failure to procure or seek
the preservation of evidence in the face of the criminal complaint and arrest
warrant, and the surrounding circumstances as discussed above.

*MacLean*, 2007 WL 2713431 at *1-2.

This decision was not "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington,* 131 S. Ct. at 786-87.  First, the state court's decision that the

delay was not occasioned by bad faith or designed to gain a tactical decision is supported

by the record.  The trial court credited the testimony of Lieutenant Donovan, the chief

investigating officer, that the delay was attributable to Petitioner's injuries, or, at least,

law enforcement's understanding of the severity of his injuries.  Petitioner has not shown

Lieutenant Donovan's testimony to be false, and this Court will not second-guess the state

court's credibility determination.  "[A] defendant's Fifth Amendment process rights are

generally not implicated where the government offers a valid reason for the delay."

*Brown*, 959 F.2d at 66.  Nothing in the record persuades the Court that the State

purposely delayed Petitioner's case to gain a tactical advantage, as required by *Lovasco*.

Because the state court's decision that the delay was not caused to gain a tactical

advantage was reasonable, the Court need not consider the other part of the Due Process

inquiry, whether the delay caused actual prejudice.  *United States v. Wright*, 343 F.3d

849, 860 (6th Cir. 2003); *see also Wolfe v. Bock*, 253 F. App'x 526, 532 (6th Cir. 2007)

("We need not decide whether [habeas petitioner] satisfies the 'substantial prejudice'

15

requirement because he has not shown that the government delayed the prosecution for illegitimate reasons."); *United States v. Hayes*, 40 F.3d 362, 365 (11th Cir. 1994). Habeas relief is denied.

### B. Destruction of Evidence

Petitioner also argues that the intentional destruction of evidence denied him his right to due process. Petitioner points to the following evidence: the destruction of three vehicles and failure to preserve blood samples.

As an initial matter, it appears that Petitioner's claim that the destruction of the accident vehicles violated his right to due process is unexhausted. Petitioner raised a destruction of evidence claim in state court, but only related to the destruction of blood samples. The Court, nevertheless, exercises its discretion and addresses the merits of this unexhausted claim. *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991), *cert. denied*, 503 U.S. 922 (1992) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court).

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible. *See Arizona v. Youngblood*, 488 U.S. 51, 58 109 S. Ct. 333,

16

2:09-cv-12992-GER-MJH   Doc # 15   Filed 07/10/12   Pg 17 of 20   Pg ID 868

102 L. Ed.2d 281 (1988)." *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001).

A defendant's due process rights are violated where material exculpatory evidence is not

preserved. *Trombetta*, 467 U.S. at 489. For evidence to meet the standard of

constitutional materiality, it "must both possess an exculpatory value that was apparent

before the evidence was destroyed, and be of such a nature that the defendant would be

unable to obtain comparable evidence by other reasonably available means." *Id.* at

488-89. The destruction of material exculpatory evidence violates due process regardless

of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.

However, "the Due Process Clause requires a different result when . . . deal[ing]

with the failure of the State to preserve evidentiary material of which no more can be said

than that it could have been subjected to tests, the results of which might have exonerated

the defendant." *Youngblood*, 488 U.S. at 56. "[U]nless a criminal defendant can show

bad faith on the part of the police, failure to preserve potentially useful evidence does not

constitute a denial of due process of law." *Id.* at 58. A habeas petitioner has the burden

of establishing that the police acted in bad faith in failing to preserve potentially

exculpatory evidence. *See Malcum v. Burt*, 276 F.Supp.2d 664, 683 (E.D. Mich. 2003).

In short, to prevail on a destruction-of-evidence claim, a defendant needs to show that the

evidence was exculpatory or that the police acted in bad faith. *Illinois v. Fisher*, 540 U.S.

544, 547-48 (2004).

With respect to the destruction of the vehicles, Petitioner shows neither that the

vehicles were exculpatory nor that the police acted in bad faith. The vehicles were, at

17

most, "potentially useful evidence." *Youngblood*, 488 U.S. at 337.  Therefore, a due

process violation occurred only if Petitioner shows that the police acted in bad faith.  The

trial court addressed the question of bad faith and held that the vehicles were handled in

accordance with regular police department policies.  Two of the three vehicles were

relinquished to insurance companies, the third, which was uninsured, was destroyed by

petition of the Macomb County Sheriff Department.  The record is devoid of any

evidence that the police acted in bad faith or outside normal procedures by releasing two

vehicles to insurance companies or petitioning for the destruction of the third.  In

addition, Petitioner's argument that Lieutenant Donovan's explanation that the County

did not wish to incur the medical expenses of immediately arresting Petitioner was not a

justifiable reason for the delay is unpersuasive.  Petitioner cites no clearly-established

Supreme Court precedent prohibiting such considerations, nor is the Court aware of any

such precedent.  Petitioner has not shown a due process violation or that the trial court's

finding of no bad faith was objectively unreasonable.

In addition, Petitioner argues that his due process rights were violated by the

destruction of vials containing blood extracted from Petitioner at the hospital.  The

Michigan Court of Appeals found the police did not act in bad faith and that the evidence

was not exculpatory.  The results of tests admitted at trial showed Petitioner's blood-

alcohol level above the legal limit.  No evidence in the record establishes that the police

had any reason to believe the vials contained even *potentially* exculpatory evidence.

"Where there is no indication that there was anything exculpatory about destroyed

18

evidence, due process has not been violated."  *United States v. Jobson*, 102 F.3d 214, 219 (6th Cir. 1996) (internal quotation omitted).  Moreover, Petitioner has not shown that the police acted in bad faith in failing to preserve the evidence.  Accordingly, the Court concludes that the state court's decision is neither contrary to nor an unreasonable application of Supreme Court precedent.

### IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court concludes that reasonable jurists could debate its conclusion on Petitioner's claim that his right to due process was violated by the pre-arrest delay.  Thus, the Court grants a COA as to that issue, and denies a COA as to the remaining issues.

### V.  Conclusion

For the reasons stated, the Court **DENIES** the petition for a writ of habeas corpus.

The Court **GRANTS** a certificate of appealability for Petitioner's claim that the pre-arrest

delay violated his right to due process, and **DENIES** a certificate of appealability for

Petitioner's remaining claims.

       **SO ORDERED**.


Dated: July 10, 2012             s/Gerald E. Rosen           
                                     Chief Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon counsel of record
on July 10, 2012, by electronic and/or ordinary mail.

                              s/Michael Williams        
                              Relief Case Manager to the Honorable
                              Chief Judge Rosen